# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-2022V

|  |  |
|---|---|
| TEDROS WONDIMU,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: November 21, 2025 |

*Laura Levenberg, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On October 14, 2021, Tedros Wondimu filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") following his receipt of an influenza ("flu") vaccine on September 26, 2020.

After review of the record and consideration of the parties' arguments, I conclude that Petitioner's shoulder pain more likely than not began within 48 hours of vaccination.

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at  https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petitioner has also established all other requirements for a Table SIRVA. Accordingly, he is entitled to compensation. Petitioner's motion for a ruling on the record is **granted.**

## I.    Procedural History

On April 7, 2022, this case was assigned to the Special Processing Unit of the Office of Special Masters. ECF No. 8. An initial status conference was held on June 28, 2022. ECF No. 12. After several months of delay in Respondent's medical review, Respondent represented that he was amenable to informal resolution of the claim and the parties attempted settlement negotiations. *See* ECF No. 20. However, by the end of October 2023, the parties reported that they had reached an impasse. ECF No. 25. On December 8, 2023, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 26 ("Rule 4(c) Report").

I set this matter on a briefing schedule to address the issue raised in Respondent's Rule 4(c) Report. ECF No. 27. Petitioner filed a motion for a ruling on the record on May 30, 2024. ECF No. 29 ("Pet'r Mot."). Respondent filed a response to this motion on July 15, 2024. ECF No. 30 ("Resp't Opp'n"). Petitioner filed a reply in support of his motion on July 30, 2024. ECF No. 31 ("Pet'r Reply"). The matter is now ripe for adjudication.

## II.    Relevant Evidence

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

On September 26, 2020, Petitioner received a flu vaccine at a local pharmacy.[3] Ex. 1 at 11. At the time of vaccination, Petitioner was 61 years old. *See* Ex. 1 at 11. Petitioner's medical history was significant for coronary artery disease with stent placement, type 2 diabetes, hyperlipidemia, and hypertension. *See* Ex. 2 at 8, 30. Petitioner did not have any history of a prior injury or pain in his right shoulder.

Two weeks after vaccination, on October 11, 2020, Petitioner had an appointment with his primary care physician ("PCP") Dr. Kyi Win Yu. Ex. 2 at 17-21. As discussed in greater detail below, the parties dispute the purpose of this visit. Dr. Yu inadvertently documented this appointment both as being for Petitioner's type 2 diabetes/hypertension/hyperlipidemia and as a routine *infant* health exam (despite

---

[3] Petitioner did not file a vaccine consent form or other record that indicates the situs of vaccination. Instead, the document filed by Petitioner is the pharmacy's payment record for the flu vaccine on September 26, 2020. Ex. 1 at 11. However, Respondent does not appear to contest Petitioner's statements that he received the vaccine in his right arm. *See generally* Rule 4(c) Report.

Petitioner's age). The notes about Petitioner's specific medical history and conditions are interspersed with questionnaires to be used for a pediatric patient. *See id.* Although this record is difficult to decipher, it indicates that Petitioner "present[ed] to discuss chronic medical conditions," received refills of several medications, had blood drawn for lab tests, and discussed the management of type 2 diabetes, hypertension, and hyperlipidemia. *See id.* Petitioner also received a diabetic eye examination. *Id.* at 22.

On November 8, 2020, Petitioner had another appointment with Dr. Yu. The purpose of this visit was to follow-up on a lab test result that showed high calcium. Ex. 2 at 14. Petitioner also received a general examination with "no swelling or deformity" noted for the musculoskeletal section. *Id.* at 15.

Petitioner returned to Dr. Yu on December 13, 2020. Unlike his previous two appointments, Petitioner now complained of "[right] shoulder pain since 9/26/20 after flu shot at cvs that day" and stated that the pain had gradually worsened to the point that he could no longer lift his right arm. Ex. 2 at 11. Dr. Yu found that Petitioner had reduced range of motion ("ROM") at abduction. *Id.* at 12. Dr. Yu diagnosed Petitioner with a tear of the right supraspinatus tendon and referred him to physical therapy ("PT").

Petitioner had his first PT session on December 31, 2020. Ex. 2 at 51. Petitioner reported that he "received flu shot 9/26, within 48 hours began to feel pain, and barely able to move shoulder."[4] *Id.* Petitioner also stated that he could not reach behind his back, turn the steering wheel while driving, or reach overhead to retrieve objects from shelves. *Id.* Petitioner rated his pain as 9/10 at worst and 7/10 at best. *Id.* The physical therapist noted a "significantly decreased" active ROM and a positive Drop Arm test consistent with a diagnosis of supraspinatus tear. *Id.*

Between January 4 2021 and January 25, 2021, Petitioner attended seven more PT sessions. Ex. 3 at 12-25. After several sessions, Petitioner reported significant improvement and virtually no more pain in his right shoulder. *Id.* at 12, 16. Petitioner was discharged from PT on February 3, 2021. *Id.* at 11.

However, on March 14, 2021, Petitioner returned to Dr. Yu complaining of right arm pain. Ex. 4 at 6. This time, Dr. Yu diagnosed a SLAP tear and referred him to orthopedics. *Id.* at 7.

---

[4] Petitioner also completed a medical history form and wrote, "After I had my flu shot at CVS Pharmacy on 9/26/2020 I started to feel pain in my right shoulder where I took the shot within 48 hours. I waited until 12/13/2020 thinking it will get better, but it got worse." Ex. 3 at 8.

Petitioner saw orthopedist Dr. Richard Parker on March 18, 2021. Ex. 5 at 13. Petitioner stated that he received the flu vaccine on September 26, 2020, and "after 24 hours felt pain in right shoulder." *Id.* Petitioner reported his current pain as 9/10. *Id.* Dr. Parker recommended ibuprofen, more PT, and an MRI. *Id.* at 13. Petitioner underwent the MRI on the same day.[5] *Id.* at 16.

On March 25, 2021, Petitioner had a follow-up appointment with Dr. Parker. Ex. 5 at 11. Dr. Parker noted that Petitioner still reported 9/10 pain. *Id.* Dr. Parker advised Petitioner to consider a right shoulder arthroscopy and indicated that he could not receive steroid injections because of his type 2 diabetes. *Id.* at 12.

Petitioner then had a surgical consult with an orthopedist in the same practice, Dr. Craig Capeci, on April 28, 2021. Ex. 5 at 9. Petitioner reported right shoulder pain for over seven months that impacted his daily activities. *Id.* Dr. Capeci and Petitioner discussed the risks and benefits of surgery and Dr. Capeci made a formal request for surgical authorization because Petitioner had exhausted all conservative treatment. *Id.* at 9-10. Petitioner indicated that he would consider the options and let Dr. Capeci know if he wanted to proceed with surgery. *Id.*

Petitioner's medical records indicate that he cancelled a further date with Dr. Capeci that had been set for August 13, 2021. Ex. 5 at 6. It is unclear if this was a surgery date or another appointment. Petitioner did not file any additional medical records.

Petitioner filed a declaration in support of the claim.[6] This declaration is rather cursory and legalistic in its phrasing, but provides some information relevant to onset. *See* Ex. 6 at 1. Petitioner stated that he felt pain in his right arm "almost immediately" after vaccination. *Id.* Anticipating Respondent's argument that his two visits with Dr. Yu before he reported right shoulder pain do not support a 48-hour onset, Petitioner stated that his October 11, 2020 appointment was only for blood work and his November 8, 2020 appointment was for a medication refill. *Id.* Petitioner further stated that he did not mention his shoulder pain at those visits because he "thought it would eventually go away." *Id.*

---

[5] The MRI found SLAP tearing, biceps tendinopathy, AC joint degenerative changes, and some mild capsular thickening. Ex. 5 at 9, 16.

[6] This declaration states that it was signed under penalty of perjury, but does not reference 28 U.S.C. § 1746. Ex. 6 at 2.

III.    **Analysis**

A.    **SIRVA Legal Standard**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Table. Section 11(c)(1)(C)(i). If a petitioner establishes a Table injury, causation is presumed.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. *Id.* at 13(b)(1). Further, a special master may find that "the first symptom or manifestation of onset . . . described in a petition occurred within the time period described in the [Table] even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." *Id.* at 13(b)(2).

"Medical records, in general, warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Such records "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions" and are "generally contemporaneous to the medical events." *Id.* Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Id.* at *19. And the Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). The special master is obligated to fully consider and compare the medical records, testimony, and all

other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Vaccine Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). A Table SIRVA claim requires proof of onset of shoulder pain within 48 hours of vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B), (c)(10)(ii). The criteria establishing a SIRVA under the accompanying qualifications and aids to interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

**B.**     **Petitioner Has Established by Preponderant Evidence the Onset of Right Shoulder Symptoms Within 48 Hours Post-Vaccination**

The only Table SIRVA element that Respondent disputes is onset. Respondent argues that the record does not demonstrate that Petitioner's symptoms began within 48 hours after vaccination. Rule 4(c) Report at 4-5; Resp't Opp'n at 2-3. Respondent points to Petitioner's 11-week delay in seeking treatment, and his two intervening appointments with Dr. Yu in which he did not mention any right shoulder issues. *See id.* According to Respondent, Petitioner cannot "explain away the lack of documented symptoms in the more contemporaneous records." Resp't Opp'n at 1.

Respondent's argument incorrectly discounts Petitioner's treatment records. Petitioner consistently reported pain that began *shortly after* vaccination. On December 13, 2020, for example, Petitioner told Dr. Yu that he had right shoulder pain "since" the September 26, 2020 vaccination. Ex. 2 at 11. To the physical therapist, Petitioner was even more precise, noting pain "within 48 hours" of the vaccine. *Id.* at 51; Ex. 3 at 8. Petitioner then described pain "after 24 hours" at his first orthopedist appointment. Ex. 5 at 13. Petitioner made these statements for the purpose of obtaining medical treatment and I give them significant weight on that basis. None of these statements are vague or contradictory and there is no record of any alternative, later onset.[7] Petitioner has demonstrated that the onset of shoulder pain more likely than not began within 48 hours of vaccination.

I find Respondent's challenges otherwise to be misplaced. As Petitioner notes in his reply, treatment delays alone do not necessarily preponderate against a favorable 48-hour onset finding. *See* Pet'r Reply at 2. It is not uncommon for SIRVA claimants to believe that their symptoms will resolve on their own and not seek medical care immediately after vaccination. I am also not persuaded by Respondent's contention that Petitioner should have realized within two weeks that his pain was not going away, and that it thus would have been "more reasonable" to discuss this issue with Dr. Yu at the October 11, 2020 appointment. *See* Resp't Opp'n at 3. There is no requirement in the Vaccine Program for petitioners to develop this level of foreknowledge regarding their condition. Petitioner's 11-week delay is not outside the realm of what I have found acceptable, when sufficiently and reasonably justified, in other decisions establishing entitlement to compensation.

---

[7] Dr. Yu's note on the November 8, 2020 musculoskeletal exam that Petitioner had "no swelling or deformity" is not supportive. *See* Ex. 2 at 15. However, it is unclear what part of the body this references and it does not speak to whether Petitioner was experiencing pain and decreased ROM and if so, when it began.

With regard to the intervening appointments, Respondent similarly contends that it would have been "appropriate and expected" for Petitioner to report any shoulder pain to Dr. Yu on October 11, 2020 because this was a "routine well visit." *See* Rule 4 (c) Report at 2; Resp't Opp'n at 4. In response, Petitioner asserts that this appointment was merely for blood work.[8] Pet'r Mot. at 6-7. My overall impression from the record is that the purpose of this appointment was to follow up on Petitioner's chronic conditions only. As with the November 8, 2020 appointment for high calcium, it is possible that Petitioner *could have* shoehorned in a mention of his right shoulder pain to Dr. Yu. But given the limited and unrelated nature of these appointments, I find that his decision to wait to see if the pain would resolve and then make a separate appointment in December 2020 does not preponderate against a 48-hour onset.

Further, Petitioner is not attempting to overcome any part of a contemporaneous medical record with his declaration testimony, as Respondent asserts. *See* Resp't Opp'n at 1-3. Although Respondent invokes the prohibition in Section 13(a)(1) against establishing causation "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion," that does not apply here. *See id*. Petitioner's statement in his declaration that his right shoulder hurt immediately is substantiated by the record of his December 13, 2020 appointment with Dr. Yu, his December 31, 2021 PT appointment, and the March 18, 2021 orthopedic appointment. Although Petitioner clearly delayed seeking treatment, it is not correct that there is no "corroborating evidence" for onset of his right shoulder pain. *See id.* at 2.

### Conclusion and Scheduling Order

Respondent does not raise any other objections to entitlement. *See generally* Rule 4(c) Report. Based on my independent review, I find that Petitioner has preponderantly established all requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). Accordingly, he need not prove causation-in-fact. Section 11(c)(1)(C). I also find that Petitioner has satisfied all other statutory requirements. Section 11(c)(A), (B), and (D).

For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation for a right-sided Table SIRVA following the September 26, 2020 flu vaccine administration.** Petitioner's motion for a ruling on the record is **granted.**

---

[8] On this point, neither parties' description is entirely correct. Dr. Yu documented Petitioner's medical history, ongoing treatment plans, and medications, and did not just order labs. *See* Ex. 2 at 17-21. Petitioner also received a diabetic eye exam. *Id.* at 22. However, it does not appear that Dr. Yu performed a full physical examination at this time, and Petitioner's declaration testimony bolsters that the focus seemed to him to be on the blood tests. *See* Ex. 6 at 1.

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

**By no later than Monday, December 22, 2025, Petitioner shall file a Status Report updating me on the parties' efforts towards informally resolving damages.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master